UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

JARROD SERGENT, et al.,

    Plaintiffs,

v.

ICG KNOTT COUNTY, LLC, et al.,

    Defendants.

Civil No. 12-118-ART

**MEMORANDUM OPINION & ORDER**

\*\*\*   \*\*\*   \*\*\*   \*\*\*

A tragic accident at the Kathleen Mine seriously injured Jarrod Sergent. Kentucky law required his employer to provide him with workers' compensation. As part of the bargain struck between employers and employees, however, the provision of workers' compensation also immunized Sergent's employer from any tort suit. The tricky legal questions presented by this case are (1) whether Sergent can recover in tort from his employer's parent corporation, and (2) if so, whether he can recover emotional damages without expert testimony.

## BACKGROUND

Sergent worked as a roof bolter at the Kathleen Mine (the "Mine") in Knott County, Kentucky. R. 34-2 at 12. A portion of the Mine's roof collapsed while Sergent was inside, severely injuring him and requiring doctors to amputate his left leg. R. 1-2 ¶¶ 9, 16. Sergent and his wife Linda initiated this action, alleging that four corporate defendants were responsible for his injuries. *Id.* ¶ 1. The Sergents' complaint pleads three counts against each defendant: negligence, negligence per se, and loss of consortium. *Id.* ¶¶ 22–30. They

allege that the defendants negligently failed to maintain safely the Mine's roof. *See id.* The Sergents seek a variety of damages, including damages for emotional distress. *Id.* ¶¶ 1, 29–30.

One by one, the number of possibly culpable defendants has dwindled away. The Court dismissed Jarrod's employer—ICG Knott County, LLC ("ICG Knott")—because it secured workers' compensation benefits for him and was therefore immune from suit under Kentucky's workers' compensation statute. *See* R. 9; Ky. Rev. Stat. § 342.690(1). After discovery, the remaining defendants filed this motion for summary judgment. R. 34. The Sergents now concede that two of the three defendant companies, International Coal Group, Inc., and ICG, Inc. of Delaware, also should be dismissed. R. 38 at 2.

That leaves only Arch Coal, Inc. ("Arch"). Arch purchased ICG Knott shortly before the accident. R. 34-8 ¶ 4. After the purchase but before the accident, Arch's regional safety manager, Stewart Bailey, visited the Mine. R. 34-16 at 40; R. 34-6 at 7. The Sergents cannot recover from Arch merely because Arch owned ICG Knott at the time of the accident; they must show that Arch assumed a duty for the safety of the roof. The crux of this case, therefore, is whether Arch assumed such a duty during Bailey's visit to the mine. But even if Arch was responsible for the safety of the Mine's roof, it contends that it is immune from suit. For the reasons explained below, Arch is not immune, and the Sergents' negligence and loss of consortium claims may proceed to trial, but they may not recover emotional damages.

## DISCUSSION

Summary judgment is appropriate where the admissible evidence demonstrates no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23

(1986). When reviewing a motion for summary judgment, the Court must view the facts in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Federal jurisdiction is premised upon the diversity of the parties, so Kentucky's substantive law controls. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

I.   **Arch Coal Is Not Immune from Suit**

Arch first contends that it is immune from suit as a "carrier" under Kentucky's workers' compensation statute (the "Act"). R. 34-1 at 24–28. The Act immunizes any "employer" who secures workers' compensation as well as the employer's "carrier." Ky. Rev. Stat. § 342.690(1). "Carrier" is defined to mean "any insurer . . . authorized to insure the liability of employers under this chapter and includes a self-insurer." Ky. Rev. Stat. § 342.0011(6). A "self-insurer" is "an employer who has been authorized under the provisions of this chapter to carry his own liability on his employees covered by this chapter." *Id.* § 342.0011(7). Arch self-insures both its own workers and ICG Knott's employees. Therefore, Arch says, it qualifies as ICG Knott's "carrier" and is immune from suit. R. 34-1 at 26–28.

Unfortunately for Arch, the Sixth Circuit has already rejected its argument. *See Boggs v. Blue Diamond Coal Co.*, 590 F.2d 655, 663 n.10 (6th Cir. 1979). In *Boggs*, a parent corporation argued that it qualified as the "carrier" of its subsidiary's workers' compensation insurance. *See id.* The Court held, however, that the Act exempts "a self-insur[e]r from tort liability only in connection with his own employees." *Id.* Although the legislature has amended the Act since *Boggs*, the relevant terms and definitions have remained the same. *Compare* Ky. Rev. Stat. § 342.0011(6), (7) (2013) *with* Ky. Rev. Stat. § 342.060(4), (5) (1978) (defining "carrier" and "self-insurer").

3

Arch notes that the Kentucky Court of Appeals recently arrived at the opposite conclusion, holding that a parent company that self-insures its subsidiary's workers' compensation liability is immune as a "carrier" under the Act. R. 34-1 at 24–25; *see Falk v. Alliance Coal, LLC*, Nos. 2012–CA–000624, 000625, 2013 WL 4246048, at *3 (Ky. Ct. App. Aug. 16, 2013). Arch concedes that *Boggs* rejected an identical argument, but it argues that the Court should follow *Falk* rather than *Boggs*. R. 44 at 3–8. The Sixth Circuit's published decision in *Boggs*, however, is binding on this Court. *Davis v. Brigano*, 34 F. App'x 155, 157–58 (6th Cir. 2002). So unless and until the Supreme Court of Kentucky agrees with its Court of Appeals, *Boggs* controls. *See Kokins v. Teleflex, Inc.*, 621 F.3d 1290, 1295 (10th Cir. 2010) ("When a panel of this Court has rendered a decision interpreting state law, that interpretation is binding on district courts in this circuit . . . unless an intervening decision of the state's highest court has resolved the issue.") (internal quotation marks and alteration omitted). Under *Boggs*, Arch is not immune as a "carrier" under the Act.

## II. There Is a Genuine Issue of Material Fact Regarding Whether Arch Assumed a Duty to Maintain Safely the Mine's Roof

A parent corporation is not subject to *respondeat superior* liability for the actions of its subsidiaries. *Thompson v. Superior Fireplace Co.*, 931 F.2d 372, 374 (6th Cir. 1991). A parent corporation may be liable, however, if it voluntarily assumes a duty owed by the subsidiary to an employee. *E.g.*, *Boggs*, 590 F.2d at 663 (explaining that a parent corporation is liable "for its independent acts of negligence which cause injury to its subsidiary's employees"). So this case turns on whether Arch assumed a duty to maintain safely the Mine's roof.

Kentucky applies § 324A of the Restatement (Second) of Torts to determine whether a parent corporation assumed a duty to its subsidiary's employees. *Merrill ex rel. Estate of Merrill v. Arch Coal, Inc.*, 118 F. App'x 37, 44 (6th Cir. 2004) (holding that Kentucky would apply § 324A to a nearly identical set of facts); *see Morgan v. Scott*, 291 S.W.3d 622, 632 (Ky. 2009). Section 324A provides that:

> One who undertakes . . . to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a)  his failure to exercise reasonable care increases the risk of such harm, or
>
> (b)  he has undertaken to perform a duty owed by the other to the third person, or
>
> (c)  the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 324A (1965).

Arch argues that summary judgment is proper for two reasons. First, because it did not "undertake [any] services" to ICG Knott regarding the Mine's roof. R. 34-1 at 20–22. And second, because there is no evidence that one of § 324A's subsections applies here. *Id.* at 21.

**A.  Whether Arch Rendered Services to ICG Knott Concerning the Mine's Roof**

The "threshold issue" under § 324A is whether the defendant rendered services to another for the benefit of the plaintiff. *Merrill*, 118 F. App'x at 44 (internal quotation marks omitted); *see In re TMJ Implants Prods. Liab. Litig.*, 113 F.3d 1484, 1493 (8th Cir. 1997) ("An actor's specific undertaking of the services allegedly performed without reasonable care is a threshold requirement to section 324A liability."). If the defendant did not, then it

5

did not assume a duty and cannot be liable.  *See Good v. Ohio Edison Co.*, 149 F.3d 413, 420 (6th Cir. 1998).

Arch contends that it did not render any services to ICG Knott concerning the safety of the Mine's roof.  R. 34-1 at 20–22.  The parties both reason by analogy to the Sixth Circuit's decision in *Merrill*, which trod similar turf.  There, a parent company's corporate director of safety visited a mine operated by the parent's subsidiary.  118 F. App'x at 44–45.  While visiting the mine, the official "went underground to look at the [mine's] roof . . . and offered advice about roof control."  *Id.* at 44.  The parent company was aware of "roof control problems" at the mine, and the official told the mine manager that the mine's roof safety system was adequate.  *Id.*  These actions went beyond "mere oversight or consultation," because the corporate officer gave specific advice regarding roof control.  *Id.* at 44–46.  Therefore, a reasonable trier of fact could have concluded that the parent corporation assumed a duty regarding roof safety.  *Id.* at 46.

Viewing the facts most favorably to the Sergents, this case is indistinguishable from *Merrill*.  According to a miner on the scene, Randy Rose, Bailey took the following actions during his visit to the Kathleen Mine:  (1) he went underground and surveyed the entrances to the mine; (2) he spoke with miners about the roof, and Rose informed him that the miners were having problems with the roof; (3) he ordered Rose to perform specific tests on the roof; and (4) he told Rose to alert him if he "had any safety problems that weren't being taken care of."  R. 39-13 at 2.  Thus, as in *Merrill*, the Arch official was aware of problems with the roof, and he offered specific advice about roof safety (*i.e.*, that the miners should drill certain holes in the roof).  Bailey's suggestion that the miners should come to him with unaddressed safety concerns provides additional support, absent in *Merrill*, that the buck

6

stopped with Arch when it came to the roof's safety. These actions—taken together, and viewed most favorably to the Sergents—raise a genuine issue of material fact concerning whether Arch undertook to "render services" to ICG Knott regarding the safety of the Mine's roof. Restatement (Second) of Torts § 324A.

Arch hotly disputes the Sergents' characterization of Bailey's visit to the mine. Bailey's account differs sharply from Rose's telling: he denies ever having given advice regarding the Mine's roof, and he says he was unaware of any safety problems. R. 34-20 ¶¶ 3–7. At this stage, however, the Court must view all the evidence in the light most favorable to the Sergents. *Chapman v. UAW*, 670 F.3d 677, 680 (6th Cir. 2012). Viewed from that angle, the Sergents' evidence suffices to survive summary judgment. Bailey and Rose obviously have different recollections of Bailey's visit to the Mine. But the jury must make the relevant credibility determinations and resolve the conflicts in their testimony. *Jones v. Sandusky County, Ohio*, No. 12-3402, 2013 WL 5992087, at *5 (6th Cir. Nov. 12, 2013) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, and this court may not entertain these inquiries on a motion for summary judgment." (internal quotation marks omitted)). Thus, genuine issues of material fact exist regarding Bailey's visit to the Mine that the Court may not resolve on a motion for summary judgment. The Sergents' negligence claim must therefore be resolved at trial.

### B. Arch Failed to Develop Its Argument That § 324A's Subsections Are Not Satisfied

In passing, Arch gestures at an alternative argument: that § 324A's subsections do not apply here. R. 34-1 at 21; *see* Restatement (Second) of Torts § 324A(a)–(c). To state a

claim under § 324A, the plaintiff must show that at least one of the subsections is satisfied. *See id.* The Court need not address this argument, however, as Arch completely failed to develop it. *See Barany-Snyder v. Weiner*, 539 F.3d 327, 331 (6th Cir. 2008) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (internal quotation marks and alterations omitted)). Without citing a single case, Arch simply asserts that subsection (b) does not apply because Bailey did not cause "Arch to replace ICG Knott in one of its duties to Sergent." R. 34-1 at 21. But subsection (b) does not use the term "replace." Instead, it applies where the defendant "undert[ook] to perform a duty owed by the other to the third person." Restatement (Second) of Torts § 324A)b). Arch's textual gloss must be earned by an argument that Arch failed to present. Therefore, the Sergents were not required to respond to Arch's argument, and the Court need not develop the argument on Arch's behalf.

### III.   The Loss of Consortium Claim May Proceed to Trial

Under Kentucky law, "a wife or husband may recover damages against a third person for loss of consortium, resulting from a negligent or wrongful act of such third person." Ky. Rev. Stat. § 411.145(2). Arch moved for summary judgment on the Sergents' loss of consortium claim, but its argument was contingent on the success of its negligence argument: if Arch was not negligent, then it did not commit a "negligent or wrongful act" under § 411.145(2) and so could not be liable for loss of consortium. R. 34-1 at 24; *see Daley v. Reed*, 87 S.W.3d 247, 248 (Ky. 2002) (explaining that loss of consortium claims are "derivative" of the injured spouse's tort claim). Because genuine issues of material fact preclude summary judgment on the negligence claim, the loss of consortium claim may proceed to trial as well.

## IV. The Sergents Have Not Identified Any Statute or Regulation to Support Their Negligence Per Se Claim

Arch is entitled to summary judgment on the Sergents' negligence per se claim, because the Sergents have failed to identify any statute or regulation that Arch violated. A negligence per se claim is much like an ordinary negligence claim but "with a statutory standard of care substituted for the common law standard." *Pile v. City of Brandenburg*, 215 S.W.3d 36, 41 (Ky. 2006); Ky. Rev. Stat. § 446.070 ("A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation."). A plaintiff alleging negligence per se must at least identify the statute that the defendant supposedly violated, as a statutory violation is the distinctive feature of the claim. *See id.* § 446.070.

The Sergents' complaint traced their negligence per se claim to the aftermath of the roof collapse. Following an investigation, the Kentucky Office of Mine Safety & Licensing (OMSL) issued a citation to ICG Knott for failing to follow its own roof control plan, as required by law. R. 1-2 ¶ 24; R. 34-4 at 1; *see* Ky. Rev. Stat. § 352.201(1), (3) (requiring a "licensee" to comply with an approved "roof control plan"). But a violation of § 352.201 cannot serve as the basis of a negligence per se claim against Arch. "Roof control plan" is defined to mean "the plan and its revisions which has been adopted by *the licensee* for support of the mine roof." 805 Ky. Admin. Regs. 5:070(1)(5) (emphasis added). The only licensee of the Kathleen Mine was ICG Knott, R. 34-7 at 1, and OMSL cited only ICG Knott as having violated § 352.201, R. 34-4 at 1. As the sole licensee of the Mine, ICG Knott—rather than Arch—is the only party that could have violated § 352.201(1) by failing to comply with its roof control plan. And Kentucky's negligence per se statute allows a

9

plaintiff to recover only from a party who violates a statute. KRS § 446.070 ("A person injured by the violation of any statute may *recover from the offender.*") (emphasis added); *see Foster v. Jennie Stuart Med. Ctr., Inc.*, Nos. 2011–CA–00136, 2011-CA-00137, 2013 WL 5296292, at *6 (Ky. Ct. App. Sept. 20, 2013) (dismissing negligence per se claims against employees because the statute they allegedly violated applied only to their employer, so they could not have been "offender[s]"). Arch was not the licensee, so it could not have violated § 352.201(1).

Perhaps in light of this problem, the Sergents' brief makes no mention of § 352.201. Instead, the Sergents vaguely assert that Arch had "a duty to comply with all state and federal mining laws and regulations." R. 38 at 30. But the Sergents do not cite any evidence tending to show that Arch violated one of the innumerable statutes and regulations to which the preceding sentence fairly might refer. *Id.* Indeed, the Sergents do not even allege that Arch violated one of those statutes or regulations. *Id.* As the Sergents have failed to identify any specific statute or regulation that Arch might have violated, Arch is entitled to summary judgment on the negligence per se claim.

## V.     The Sergents Cannot Recover Emotional Damages

In *Osborne v. Keeney*, 399 S.W.3d 1 (Ky. 2012), the Kentucky Supreme Court held that plaintiffs seeking damages for emotional distress must adduce expert testimony in support of their claims. The Sergents did not identify an expert before the discovery deadline expired, so *Osborne* bars them from recovering damages for emotional distress.

The Sergents correctly observe that *Osborne* concerned a claim of negligent infliction of emotional distress. R. 38 at 35. They urge that *Osborne*'s expert-testimony requirement

applies only to claims for emotional damages where there was no physical impact. *See id.* A careful examination of *Osborne* reveals that its holding was not so limited.

*Osborne* arose from incredible facts. Brenda Osborne was watching television on her couch when a plane crashed into her home. *Osborne*, 399 S.W.3d at 6. None of the debris struck Osborne, and she suffered no physical injuries. *Id.* At the time, Kentucky was one of six states that adhered to the so-called "impact rule," which prohibited a plaintiff from recovering damages for "mental anguish . . . unaccompanied by physical contact or injury." *Id.* at 14 & n.39 (internal quotation marks omitted). *Osborne* abandoned the impact rule, replacing it with the requirement that a plaintiff seeking emotional damages "present expert medical or scientific proof to support the claimed injury or impairment." *Id.* at 17–18.

But does *Osborne*'s expert-testimony requirement apply generally, or only to similar impact-free cases? Since the task of a federal court sitting in diversity is to predict how the state supreme court would rule, it is best to begin with what the Kentucky Supreme Court said. *See OneBeacon Am. Ins. Co. v. Am. Motorists Ins. Co.*, 679 F.3d 456, 460 (6th Cir. 2012). *Osborne* repeatedly referred to the rule it was establishing as a rule about emotional damages, period. *See id.* at 6 ("emotional-distress plaintiffs [must] satisfy the elements of a general negligence claim. Further, a plaintiff will not be allowed to recover without showing, by expert or scientific proof, that the claimed emotional injury is severe or serious."); 18 ("[i]n adopting a *new rule* for claims *involving emotional distress* . . .) (emphasis added); 23 ("A plaintiff claiming emotional distress must . . . show a severe or serious emotional injury, supported by expert evidence."). The Kentucky Supreme Court gave no indication that the expert-testimony requirement is limited to impact-free cases.

11

Read plainly, *Osborne* announced a generally applicable rule that applies to all claims for emotional damages.

The Court's logic confirms that *Osborne* meant precisely what it said. The goal of the impact rule was to guard against fraudulent claims for emotional distress, which are necessarily subjective and difficult to disprove. *Id.* at 15. But the impact rule itself encourages frivolous litigation, as it incentivizes plaintiffs to "engage in extravagant and creative pleading in order to find a sufficient impact." *Id.* at 18. *Osborne* therefore concluded that the better way to police claims for emotional damages was to dispense with the impact rule and require plaintiffs to support their claims with expert testimony. *Id.* at 16–18. Although impact may have been the best available proxy for the seriousness of an emotional distress claim in the 19th century, "vast[] improve[ments]" in "medical science and treatment" now offer more reliable methods of screening such claims. *See id.* at 16. *Osborne* thus sensibly eschewed an ultra-formal, unreliable impact requirement in favor of reliable case-by-case review by medical experts.

Each reason the Court gave for abandoning the impact rule weighs against adopting an impact-based test for determining whether one needs an expert. First, it would be odd to replace the formalistic impact rule with an equally formalistic expert-testimony requirement that turns on—you guessed it—impact. Such a rule would encourage exactly the sort of absurd pleading that *Osborne* sought to end. If plaintiffs can escape the expert-testimony requirement by demonstrating any *de minimis* impact, then they will engage in the same "extravagant and creative pleading" to escape *Osborne* that they formerly used to skirt the impact rule. If *Osborne* sought to replace the impact inquiry with a more scientific approach to evaluating emotional distress claims, then it could have achieved its goal only by

announcing a rule of general application.  *See id.* at 16 (noting improvements in medical science since the establishment of the impact rule).

Second, if impact is an unreliable measure of the seriousness of emotional injuries, then why should it determine whether one needs an expert?  Since there is nothing talismanic about a potentially *de minimis* impact, there is no principled reason for subjecting only impact-free cases to the expert requirement.  It is not difficult to imagine compelling examples demonstrating the absurdity of such a rule:  a mother forced to watch the death of her child would be required to employ an expert to bring her claim, but a litigious goon inadvertently bumped by a stranger on the street would have free reign to invent his own emotional traumas.  Once the impact rule is recognized as an outdated relic from a bygone era, then there is no reason to be more suspicious of the mother's claim than the goon's.  And under *Osborne*, the mother's claim for emotional distress requires expert testimony.

Finally, the Court's nod to medical science shows the need for expert testimony even in cases involving an impact.  *See id.* at 16.  In Kentucky, claims that lay-people are ill-equipped to evaluate must be supported by expert testimony.  *See, e.g.*, *Underwood v. Kousa*, No. 2010–CA–001681, 2011 WL 2416858, at *2 (Ky. Ct. App. Jun. 17, 2011) ("Liability for medical negligence generally requires expert testimony to establish the applicable standard of care, its breach, and consequent causation of injury.").  The impact rule was inspired by the inability of juries to adjudicate claims for emotional damages:  Kentucky's Supreme Court feared that allowing impact-free emotional distress claims would "open the courts to . . . the presentation of claims for injuries beyond the capacity of juries properly to assess." *Osborne*, 399 S.W.3d at 15 (internal quotation marks omitted).  *Osborne* did not doubt the impact rule's premise, it merely settled on a better method for ensuring the genuineness of

such claims. *See id.* at 18 ("[T]his rule *continues to address and support the concerns that prompted the adoption of the impact rule in the first place*. But now the rule is updated in light of societal advancements in mental health treatment and education . . . .") (emphasis added). If juries cannot assess claims for emotional distress, and if impact is no longer the threshold requirement sorting meritorious claims from fraudulent ones, then expert testimony must be required to assist the jury. *See id.*

In conclusion, the language and logic of *Osborne* point in the same direction. In Kentucky, plaintiffs seeking damages for emotional distress must adduce expert testimony in support of their claim. The Sergents failed to obtain an expert here, so their claims for emotional damages are barred.[1]

Accordingly, it is **ORDERED** that:

(1) The defendants' motion for summary judgment, R. 34, is **GRANTED IN PART AND DENIED IN PART.**

    (a) Arch is entitled to summary judgment on the Sergents' negligence per se claim.

    (b) The Sergents' negligence and spousal consortium claims may proceed to trial, but they may not recover emotional damages.

    (c) International Coal Group, Inc., and ICG, Inc. of Delaware, are both entitled to summary judgment and are **DISMISSED** from this case.

---

[1] Even if the Sergents had obtained an expert, they may not have been able to recover damages for emotional distress. Section 324A says that a defendant may be "subject to liability . . . for *physical harm* resulting from" his negligence. *See Gilbert v. United States*, 899 F.2d 1224, 1990 WL 42218, at *1 (9th Cir. April 12, 1990) (noting § 324A's "physical harm requirement"). But Arch did not raise this argument, so the Court need not address it.

14

(2) A telephone conference is **SCHEDULED** for **Friday, December 13, 2013, at 11:00 a.m.**, to discuss the scheduling of trial.  A court reporter is needed and will be provided by the Court.  Counsel for Arch Coal, Inc., and the Sergents must **DIAL IN** to this conference call **five minutes before the scheduled time** by following these steps:

  a. Call AT&T Teleconferencing at 1-877-873-8017;

  b. Enter access code 8284218 (followed by "#"); and

  c. When requested, enter the security code, 1234 (followed by "#").

This the 9th day of December, 2013.

Signed By:
Amul R. Thapar  AT
United States District Judge